Case number 17-5741, Rita McDaniel v. Upsher-Smith Laboratories Inc, oral argument is not to be received, 15 minutes per side. Mr. Cole for the appellant. May it please the court. Good morning, it's Judge Cole. I understand you've reserved five minutes for rebuttal and you may proceed. All right, may it please the court. So, as I see it, there are really two issues in this case. One is the preemption issue, which is federal constitutional law, and the other is the learned intermediary defense, which is state law. Now, there are a few preemption doctrines at issue in this case that I'm going to address. One I can address very briefly, because both sides agree, as I understand it, that the the Buchman case, which has to do with implied preemption, the appellee's content is relevant, but we contend is not relevant here. Buchman does not apply to this case. That's the implied preemption doctrine, because there is a general duty in Tennessee to warn the consumer. Now, there is something, a defense, to that general duty in Tennessee called the learned intermediary defense. But that defense does not change, is an affirmative defense, and it does not change the underlying duty to warn consumers. So, defendant agrees that this court, in the Fulgenci decision, correctly stated that the independent pre-existing state law causes of action that parallel federal safety requirements are not preempted. And so, the question is, in a situation... You are being called for a conference. ...in which the pharmaceutical company did not adequately warn the doctor, does the medication guide regulation parallel the state law duty? From appellant's perspective, the the medication guide regulation, we are required to... Excuse me, Mr. Cole. I'm sorry. Excuse me. It's Judge Cook with a question. We aren't actually debating adequacy today, are we? It's the issue of warning versus... necessary warning versus not necessary, right? It's not the adequacy of the warning. So, is that it? Is that it, Barr? Yes, Your Honor. So, our argument is that while the the FDA warning, in and of itself, is sufficient, it became misleading when the appellee provided additional information to the doctor that made the warning misleading and made the learned intermediary defense not apply. But because the doctor was not correctly warned... Now, adequate might be a way of saying it, but it was... Because the doctor was misleadingly warned by being encouraged to prescribe amiodarone for atrial fibrillation, which is a dangerous off-label use, because the doctor was misleadingly warned, the doctor cannot serve as a learned intermediary and the the duty to warn the consumer remains. In several Tennessee cases... So, the consumer's knowledge, Mr. Cole, the consumer's understanding, medical understanding, would would trump, so to speak, what the physician was told? Is that is that your thinking? Is that how the claim develops in your in your estimation? You'd want your consumer to have a better understanding than the physician. The patient should have known or been warned differently than the physician. Is that what I'm understanding you to say? So, ordinarily, how this is supposed to work, the doctor can serve as a learned intermediary. Right. It's only important to warn the doctor. That's how this is ordinarily supposed to work. But in a situation, we would say such as this one, where the doctor has been misled, has been misled, then there's still a residual duty to warn the consumer. The learned intermediary only works when the doctor is adequately warned. Now, the medical... Help me, if you would, please. I bet my colleagues understand it, but I'm not sure I follow you on how the doctor was misleadingly warned. What what exactly do you do you understand that or we are to understand that to be? Yes, Your Honor. So, just to explain a little bit, we did not go into this in detail in our pleading because it's our understanding that a learned intermediary defense constitutes an affirmative defense or a defense that we are not required to plead around. But to answer your question, for instance, there is a an app that 50% of all doctors use called Hippocrates, which includes information about generic drugs that it obtains directly from the generic manufacturer. And this app encourages doctors and says that amiodarone can be prescribed for atrial fibrillation. And in fact, that's an unreasonably dangerous off-label use, we would consent. So, there's two things going on here. One, in our pleading, we did not go into many details about this because it's our understanding that we did not have to plead or anticipate or plead around an affirmative defense. And the District Court dismissed our complaint with prejudice as to the failure to warn claim. So, as to the failure to warn claim, we did not have an opportunity to allege more clearly in which way the doctor was not adequately warned. But I'm just telling you this about Hippocrates, just to give the court an idea of the answer to your question. This is Judge Stein. I have a question on the first issue on preemption. Is it your plan? Do you admit that if the defendant had provided a medication guide to go with this pharmaceutical, then there would be preemption? If the... So, under this... They didn't provide it. They did not provide it. Yes, Your Honor, if... If they had, they would be preempted. Right. It would be preempted. We wouldn't have a very good argument if they had. If they... Well, except other than that they misled the doctor, we would have that argument still. But if they had provided a medication guide, and we were trying to say that the defendant should have given a different warning than was in the medication guide, that would be preempted under mincing. But, as it is, even the defense admits that mincing does not apply to that case. But that is why we were kind of... did it that way in our pleading, because if we had said that they should have provided a different warning than the medication guide, or they should have provided a different warning than the FDA-required medication warning, then we would have been preempted. We would have been preempted under mincing. So, it's their failure to provide... claim here, failure to warn, right? Yes. Yes, exactly. Yes, Your Honor, that is exactly right. Their failure to provide the medication guide gives us the state law claim. And the reason why we have to plead the medication guide is because if we didn't, you know, if I had said this before, if the FDA regulations required them to warn by carrier pigeon, well, obviously, that wouldn't be the only acceptable warning, but that's what we would have to plead so that we weren't preempted under mincing. Judge Cole, Mr. Cole, you mentioned in your initial comments that mincing is not controlling and that Buckman is not relevant because of the general duty to warn. In terms of Buckman, in your briefing, you really make a distinction, I think, that the Buckman case is a sort of a fraud on the FDA-type claim against the medical device provider. And the injury that occurred there occurred when the  FDA-type claim was made. But here, your claim is under the Tennessee law. Is that the distinction you're making that why Buckman does not control? Because I understand Applebee believes, was argued that Buckman, or may be arguing that Buckman is controlling here. Yes, Your Honor, that's exactly right. And actually, I believe I'm out of my time. Well, you can finish your answer. You can finish your answer. Thank you. So I actually think that one of the cases that defendants cited in their Applebee's brief is a great example of this. In Loretto, of the distinction, in Loretto, the plaintiffs argued that, well, if they would have told us that this drug violated FDA regulations and was illegal under FDA regulations, we would have bought a cheaper drug. And the court said that, well, that's preempted under Buckman because there's no requirement for the drug manufacturer to tell you that there are better, cheaper drugs available. But this is different than that case. Because in this case, we're saying that this drug is actually dangerous, and there is a Tennessee duty to warn. And while the learned intermediary can be a defense, it's not a defense in this case because the defendant did not adequately warn the doctor, or they misled the doctor, to put it differently, they misled the doctor about it being safe for actual fibrillation. Okay, if there are no other questions right now, you'll have your full rebuttal time, Mr. Cole. Thank you. Judge Cook, you have a question? I did. I had one question, and I hate to do this to extend the time, but my question is whether or what case you have, Mr. Mr. Cole, that supports Tennessee having this It's an actual Tennessee case supporting your theory, the parallel duty to send out medication guides. Where is that in Tennessee law, sir? Your Honor, so in Tennessee law, it says that the learned intermediary doctrine We're back to learned intermediary. Is that really what we're focused on today? Learned intermediary rather than the motion to dismiss didn't focus on that doctrine, did it? It's a motion to dismiss did not focus on that, did not focus on that doctrine, but to answer your question about which the parallel, the parallel duty is the failure to warn. By not giving the medication guide, and we had to plead it that way because of mincing, but by not giving the medication guide, they violated their Tennessee duty to adequately warn, and the reason it's specific to a medication guide is because of mincing. But under Tennessee law, it says a pharmaceutical manufacturer can discharge its duty to warn by providing the physician with an adequate warning of the drug's risk. And so that is a statement of the duty to warn in this context. It says that they can discharge their duty to warn, but they still have a duty to warn, but if they adequately warn the physician, they can discharge that duty to warn, but we say that they have not adequately warned the physician because they've been misleading. All right, thank you very much. Okay. Thank you, Mr. Cole. We'll hear next from Mr. Hegarty. Yes, Your Honor. Good morning. Good morning. Mark Hegarty on behalf of Upshur Smith. This is a very straightforward case of preemption involving a generic prescription drug under the Federal Food, Drug, and Cosmetic Act. The appellant's entire cause of action, as we have heard, is for allegedly failing to provide a medication guide for amiodarone, that's the drug at issue, as required under the Act. The Buckman decision holds that this type of claim is preempted. The district court here and numerous other courts have applied Buckman to the very claim being brought here, failed to provide a medication guide for amiodarone, and held that such claims are preempted. The district court's decision here that the plaintiff's claims should be dismissed with prejudice should be affirmed on this ground. The medication in focus in this case is the generic drug amiodarone, an arrhythmia drug. As a generic drug, the Supreme Court's Buckman-Bartlett decisions preclude traditional fair to warn claims. Plaintiff recognized this in his complaint and in his lower court briefing on our motion to dismiss by clearly and unequivocally making this case all about the medication guide. This is no more evident than from his opposition to the motion to dismiss, where on page 10 he states as follows when referring to the complaint, quote, the allegation is not one of adequacy of content fair to warn, i.e. the verbiage or even the format fails, but an actual and physical negligent failure of Upshur Smith to fulfill its federally mandated responsibility to ensure medication guides are available for distribution directly to patients with each prescription, close quote. On page 12 of the opposition, which the district court cited, he says, quote, McDaniel does not allege that the contents of the labeling should have been changed. More specifically and importantly, McDaniel alleges that the medication guide and its warnings were not provided to him in accordance with the FDA mandate. Close quote. And Judge Cook, I believe you picked up on this and I think the counsel for the appellant agreed that this is not about the adequacy of the warnings. Now Buckman provides the general framework for preemption of this type of claim, namely that a claim is preempted if it would not exist in the absence of the food, drug, and cosmetic. Mr. Haggerty. It's Judge Cole, I just have a quick question. How do you reconcile the Fulgensi decision? There we concluded, I think, that a state claim promised under failure to provide federally mandated warnings was not preempted. Sure. How do you reconcile that with this one? The Fulgensi case doesn't change the result, Your Honor. The plaintiff's claims in that case, as the court recognized, were premised on a pre-existing independent state duty to provide adequate warnings to the doctor, not the patient. The claims there fit under traditional failure to warn claims. That is, in that case, the the manufacturer failed to adequately comply with the rule of sameness, which was to make the generic drug labeling the same as the innovator drug labeling, which they were allowed to do and required to do. So, Menzies and Bartlett didn't apply. So, the evidence of not complying with the rule of sameness went to the adequacy of the warnings going to the doctor. Here, allegations of failure to provide a medication guide exists solely by virtue of FDA regulations, and there is no parallel cause of action under Tennessee law. If the FDA did not require a medication guide, plaintiff would have no basis to bring a cause of action because there is nothing comparable under Tennessee law. Well, what about just the failure to warn in the generic sense? Well, that goes to, I think, what their entire claim is, which is to argue that Tennessee's law on the duty to warn a consumer generally, and this argument fails because a claim involving a prescription drug involves the warnings going to the doctor, not the consumer. The law provides, in the context of prescription drugs, that it is the alerted third party between the manufacturer and the consumer that is in the focus, not the consumer. And the Tennessee Supreme Court, in the Nye vs. Bayer case, stated, quote, where prescription drugs are involved, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use, close quote. As such, there is no traditional state law claim for not providing a warning directly to the consumer, and in this context, the law is to the contrary, saying there is no duty. In the face of no pre-existing, and in fact, contrary, Tennessee law giving rise to a cause of action for failure to warn a patient directly about the risks of a prescription drug, the conduct forming the basis of the plaintiff's claims, or giving rise to the plaintiff's claims, are solely for alleged violation of the medication guide requirements under the FDCA. Such claims would not exist, do not exist, or did not exist, before the FDCA was enacted, and did not, and do not exist under Tennessee law. Mr. Hagerty, in keeping with your argument there, am I correct in my understanding that all district courts that have we're debating today have found that these claims preempted? Am I right about that? That's my understanding, or if there is an outlier there here or there, obviously we would dispute that that conclusion, but my understanding is the vast majority of district courts, and we cited multiple district courts, and I think even, I know we even cited to the 11th Circuit in the Small v. Lawrence case, I'm sorry, the Small v. Amgen case, that such medication guide claims are preempted under Buckman. I'm sorry, go ahead and finish, Judge Cole. I just have a follow-up, Judge Cole, I have a follow-up. The district court here did not address Fulgazi, but McDaniel didn't cite it in opposition to the motion to dismiss, is that correct? Yes, that's correct. Yep, okay. We're ready, I mean, I think Fulgazi supports us, because that claim involved traditional Tennessee failure to warrant claims against a doctor, which is the vehicle for seeking liability against a manufacturer in a prescription drug product liability case. The appellants rely on, one of the cases they rely on, of the circuit cases, is this Bausch v. Stryker case, which they say is really in line with Fulgazi, and that it would, you know, support their claim that there's this independent state law tort claim in this case. So, we've talked about district court cases that have, you know, maybe support more your position, but what about the circuit courts, including Bausch? Sure, Judge Cole. The Bausch case involved claims that the failure to comply with FDA rules as it relates to good manufacturing practices was consistent with setting a standard for how you are to properly manufacture a drug, or I should say a product in that case. There, the claim was that the product made was adulterated, was not properly manufactured, and the federal regulations that we were arguing was evidence that the company did not properly manufacture that product. Now, such a claim of not properly manufacturing a product, as that court said, is a recognized state law duty under Tennessee law. In fact, the court said here that it's a recognized duty of the duty of the manufacturer to use due care in manufacturing a medical device. So, the Bausch case actually involved a recognized duty of care under Tennessee law to properly manufacture, not to, I guess it wasn't Tennessee law, but not manufacture, to properly manufacture the product. Here, there is no Tennessee authority or law that says a medication guide is to be provided, and certainly not to directly warn the patient. In fact, the law is to the contrary. But there is a Tennessee Product Liability Act that just deals, as Judge Feiler said, I think, generally with the duty to warn. Is that correct? There is a Tennessee Product Liability Act, but that Act does not make this claim viable. Under the Act, for failure to warn, the plaintiff must allege that the warnings were defective. And here, there is no such thing. And in fact, they say they're not defective. I'm sorry, I missed that, Judge. Is it not defective if they have no warning at all? Well, there is a warning, which they allege is adequate, that went to the doctor. And that is the learned intermediary doctrine, which again, is recognized under Tennessee law, and it's recognized that the doctor is in the best position to weigh the risks and benefits and make the decision on whether the patient should take the drug. So, the warnings went to the doctor, and they're not alleging they're inadequate. And there is no law that says that if you don't, under the Tennessee Product Liability Act, if you don't provide those warnings, directed to the patient, there can be liability. In fact, that would be contrary to established Tennessee law. One of the things I want to make note of is the contention that the plaintiffs say that the medication guide sets a standard of care. It does not set a standard of care. FDA made this very clear when it published the medication guide rule that it did not intend to affect the duties of manufacturers under state law. As the Small v. Amgen court said, that's page 38 of our briefing, quote, FDA explicitly stated that it did not intend to change or expand state tort law when it promulgated the medication guide regulations. Specifically, the FDA stated that it does not believe that this rule would adversely affect civil tort liability because it does not alter the duty or set the standard of care for manufacturers, and because courts have not recognized an exception to the learned intermediary defense in other situations where FDA has required patient labeling. The Tennessee Court of Appeals in King v. Danik made clear that negligence per se claims, or a claim, cannot be premised on FDCA administrative requirements. That is exactly what is at issue here. FDA, under 21 CFR 208.24b, which is the regulation on which plaintiff relies, concerns the administrative requirement of making medication guides available to distributors, packers, or authorized dispensers. It is the distributors, packers, or authorized dispensers who are to provide the guides to the pharmacies, who are then to provide those to the patients. Consistent with what FDA has said, the supplying of the medication guide does not create a duty to the patient, but an administrative requirement of physically getting the medication guide to those entities dealing directly with the patient. In addressing the same type of legal authorities plaintiff cites here, the Tennessee Court of Appeals in King v. Danik stated, additionally, the plaintiffs, in arguing for the viability of their, in this case, negligence per se claims, have not dealt with the procedural and factual element setting their claim apart from those cases, namely, the presence of implanting physicians between the defendants and the plaintiffs. The existence of an independent actor between the plaintiff and a defendant is a factor not present in the negligence per se Tennessee decisions on which the plaintiffs rely. Similarly, the whole in plaintiff's argument is that the duty, the standard of care, is to warn the physician, not the patient. That is how the patient is protected under Tennessee law. The medication guide requirement does not set a specific standard of care for this duty. And even though the plaintiff didn't mention this yet, but they have argued about the negligence per se doctrine, that theory cannot be based on a preempted claim. So there is no negligence per se claim here. The plaintiff also raised arguments about misleading the doctor. That argument misses the point. First, that argument was not made on in the lower court. Next, they did not appeal the dismissal of their fraud and deceit claim where those allegations were made. There's no argument that that's a viable claim that allows him to proceed in the district court. Second, the allegation did not affect preemption because, again, the learned and intermediary doctrine goes to show not a necessary defense or affirmative defense, but that there is no duty to warn the patient. In other words, getting around the learned and intermediary doctrine by alleging the doctor was misled does not affect the result in this case. The duty is to warn the doctor and warn him adequately. While the plaintiff is alleging that she asserted the doctor was not adequately warned, the problem with that argument is that that's not the claim they're appealing. They're appealing dismissal of their claim for failure to warn the patient directly with a medication guide. The learned and intermediary doctrine in Tennessee shows that no such claim is viable under state law. And the law in Tennessee is not that the manufacturer of prescription drugs owes a duty to warn the consumer, but can discharge the duty or satisfy the duty, as plaintiff argues, by providing adequate warnings to the prescribing doctor. No case has ever said that. The learned and intermediary doctrine establishes there is no duty to warn the patient directly. Instead, it's to warn the physician who is then in the best position to make the decision. This is the liability in this case cannot can be premised on failure to warn the physician, but not failure to warn the patient. A claim in Tennessee for failing to warn the patient via medication guide is solely a creation of federal law and as such is preempted. I think I'm at the end of my time. Perfectly timed. Thank you. Mr. Cole, you have five minutes, I think. Yes, your honors, there are several things I would like to address. One, the medication guide has never been the basis or the motivating factor for our claim. We've always, to be honest, we've always seen it as somewhat of an inconvenience that we have to track the FDA. Otherwise, we would be preempted under mensing. Our claim has always been a state law failure to warn claim and contrary to what he had said at the end there, under the Tennessee Learned Intermediary Defense, a pharmaceutical manufacturer can discharge. I'm quoting directly from the case. It's duty to warn by providing the physician with an adequate warning of the drug's risk. And we're saying that they did not provide the doctor with an adequate warning. Now, we understand that they might have a defense to our claim of failure to warn based on not providing the medication guide and misleading the doctor. We understand that they might say, well, look, the doctor wasn't misled. We did adequately warn the doctor. But that is an affirmative defense. And they have said that the Learned Intermediary Doctrine is not an affirmative defense. But in Tennessee, that is the language that the cases have used. For instance, in Nye v. Bear Crop Science, it says that the Learned Intermediary Doctrine constitutes a defense by pharmaceutical manufacturers in cases where the plaintiff has suffered injury from medication. And this court, in Payne v. Fardis Pharmacy Court, also said that they quoted this language from Nye and said that the Learned Intermediary Doctrine constitutes a defense in Tennessee. And in a district court case in Tennessee, in the western district of Tennessee, Bostick v. St. Jude Medical, they described the Learned Intermediary Doctrine as an affirmative defense. And so we're not saying that they can't plead and prove this defense at trial. We don't think that we can or we don't think that they will be able to because we think that they misled the doctors through Hippocrates and other means. But the reason we did not plead much about that in our complaint is that it was our understanding that an affirmative defense is only a basis for a motion to dismiss when the plaintiff pleads itself out of court. That is, admit all of the ingredients of an impenetrable defense. That's citing from Bostick v. St. Jude Medical. And so we see the Learned Intermediary Doctrine, and you know, it came up a lot in Appley's argument, also, we see the Learned Intermediary Doctrine as a defense so that they should feel free to try to prove at trial. But the heart of our claim is that they have a duty to warn the consumer when they don't adequately warn the doctor. They didn't adequately warn the doctor because they misled the doctor and they did not warn the consumer by providing a medication guide. The medication guide is not a key part of our claim. Counsel, it's very difficult because I don't think you're able to hear us when we're trying to question. Oh, sorry. Yeah, it's not your fault. Is the idea of your complaint here that the Is the idea that your plaintiff here is harmed by virtue of the doctor not having the most recent warnings, not that your client did not obtain a medication guide? Because that's confusing in your complaint. Which is it? Right. I would say that it's both. It's not that the doctor did not have the most recent warning. It's that the doctor was not adequately warned because in addition to the FDA required warning, they also through Hippocrates and other means had encouraged the doctor to prescribe amiodarone for atrial fibrillation, which is an unreasonably dangerous use and therefore the doctor could not serve as a learned intermediary. Okay, stop. Stop. Stop. I can't because you're going to go on and I need to ask another question. It was difficult to hear. Are you telling us the doctors consult an app? Is that what you told us? It's not Hippocrates, but what is the app? That's where this meeting went on. Is it an app, sir? Yes. Yes, your honor. It is an app called Hippocrates. And we did not get a chance to develop this theory because our failure to warn claim was dismissed with prejudice and we did not in the complaint. So it's not crucial to our argument today? Do you need that today because it wasn't pled? Well, other than to say that that to the extent that we were required to anticipate and plead around their affirmative defense, we would have been able to do so if we had had the chance. Okay, another question. Why is it that you're that you never cited the full, I'm always pronouncing it wrong, but the full geesey full genzy opinion in your motion is in opposing the drug manufacturer's motion to dismiss. I am I'm not sure the answer to that, but I know that we made I know that we made the same argument. I am I'm not sure why we did not cite that specific decision, but that It doesn't show you relied on that decision. There's no reliance in your opposition to the motion to dismiss on that case. Right? You think you maybe make the same arguments that that that are made in that opinion by Judge Boggs? Yes, your honor, we made the same arguments and I am not sure why we did not cite the specific case, but we made the same arguments and we did rely on the specific case in our appellate's brief. I don't think that we waived the issue because we made the same argument, but we did cite that case in our appellate's brief. Well, the district court could not struggle with it because you had not brought it to the court's attention, right? Yes, your honor with that specific case, that's that's accurate. Well, what well if you say that specific case, did you bring some analogous case or some equally pertinent case? I believe that we made we made the the same argument that in that case that it is not preempted because there is a Tennessee duty to war. Thank you. It is not. Yes. Yes, your honor. And one other point that I wanted to make is we do disagree with opposing counsel that there are no district court cases or not many district court cases that have rejected the that have rejected the preemption argument. You know, there have been district court cases that have gone both ways. Are we going to find those in your brief? Do you have the name? Yes. Yes, your honor. Not off the top of my head, but they are in the briefing. Okay. And one one other thing one point that I wanted to make about small versus Amgen is in small versus Amgen, the the plaintiff, oh the plaintiff had contended that FDA medication guide regulations preempt Florida's learned intermediary doctrine and we have never made that argument. We have not said that they preempt the learned intermediary doctrine instead. We have said that under the normal application of the learned intermediary doctrine It doesn't apply because the warnings to the physician were inadequate or misleading So, so it's not that we're saying that the medication guide Argument Regulation preempt the the Tennessee's learned intermediary doctrine, we're just saying that when the defendant does not discharge its duty to warn the consumer by adequately warning the doctor then the learned intermediary by its own operation does not apply. And in Amgen, they actually cited that it was they held that there was no preemption and they said that the historic police powers of the states are not superseded unless that was the clear and manifest purpose of Congress and we would say that a failure to warn action is kind of the prototypical the prototypical state law negligence claim. Okay. Thank you, Mr. Cole. Your time has expired, but I want to make sure that there aren't any other questions. Your Honor, I could jump in. I think Mr. Cole had probably three or four more minutes if I could just respond to one point he made, but I'll defer to you as far as whether that's appropriate. Who was that that just spoke? This is Mark Hagerty for Upshur Smith, Your Honor. I just noted that Mr. Cole went on about three or four more minutes beyond his time and would like to just to respond to one point he raised. Well, you know, I don't really see any need to, but if the other two judges would like to hear that, that's fine. I guess I would take a minute. Okay, why don't you take a minute? Okay, the only thing I wanted to respond to was again this claim that that if you don't satisfy the learned intermediary doctrine, then you can be liable for not warning the patient. That's just simply not true. The learned intermediary doctrine defines who the duty to warn runs to, and if you fail to comply with that obligation and not adequately warn the doctor, that is your basis for finding liability against the manufacturer because you didn't adequately warn the doctor. It doesn't suddenly convert and say, okay, well now you look at the consumer. Did you adequately warn the consumer? No, the liability is premised on not warning the doctor. Okay, we have that point. We get that point. Thank you. Thank you. Yeah, we have all we need, I think. Okay, counsel. Thank you for your arguments today. We really do appreciate them, and we do appreciate that there are some limitations to technology, and we do the best we can with them. This was very beneficial, I think, to the panel. Thank you. With that, the case will be submitted and you may, quote-unquote, we can adjourn this proceeding.